UNITED STATES of America, Plaintiff-Appellee,

v.

Richard J. MAESTAS, Defendant-Appellant.

No. 74–1799.

United States Court of Appeals, Tenth Circuit.

Argued July 10, 1975.

Decided Aug. 18, 1975.

BARRETT, Circuit Judge.

Richard J. Maestas (Maestas) appeals his jury conviction for the offenses of first-degree murder and rape committed in the Indian country.

Maestas—a non-Indian—was charged under 18 U.S.C. §§ 1152 and 2031, with the rapes of Phyllis Estevan and Mildred Louise Poncho, both Indians, and with the killing of Phyllis Estevan during the commission of rape, in violation of 18 U.S.C. §§ 1152 and 1111. Maestas was sentenced to terms of ten years on each of the rape charges, such sentences to run concurrently, and to a life imprisonment sentence on the murder charge to run consecutively to the ten year sentences. Motion for new trial was denied.

On this appeal, Maestas contends: (1) that he was denied his right to the requisite number of peremptory jury challenges afforded under Rule 24(b) Fed.R.Crim.P., 18 U.S.C.; (2) that the Trial Court erred in denying his motion for a new trial; (3) that the Trial Court erred in denying his motion for a mistrial following improper impeachment by the Government of its own witnesses; (4) that the Trial Court abused its discretion by allowing a testifying F.B.I. Agent to remain at counsel table during trial; and (5) that he was denied due process as a result of the invalid racial classification established by the statutes under which he was convicted.

Richard J. Smith, Asst. U. S. Atty., Albuquerque, N. M. (Victor R. Ortega, U. S. Atty., Albuquerque, N. M., on the brief), for plaintiff-appellee.

William W. Deaton, Federal Public Defender, Albuquerque, N. M., for defendant-appellant.

Before CLARK *, Retired Associate Justice, and HILL and BARRETT, Circuit Judges.

I.

Maestas contends that, having been indicted for a crime punishable by death under 18 U.S.C. § 1111,[1] he was entitled, pursuant to Rule 24(b) Fed.R.Crim.P., 18 U.S.C.[2] to twenty peremptory jury chal-

---

\* Supreme Court of the United States, sitting by designation.

1. 18 U.S.C. § 1111 provides, inter alia:
    (a) Murder is the unlawful killing of a human being with malice aforethought. Every murder . . . committed in the perpetration of . . . rape, . . . is murder in the first degree.

    .    .    .    .    .    .

Whoever is guilty of murder in the first degree, shall suffer death unless the jury qualifies its verdict by adding thereto "without capital punishment", in which event he shall be sentenced to imprisonment for life;

2. Rule 24(b) Fed.R.Crim.P., 18 U.S.C., provides in part:
    If the offense charged is punishable by death, each side is entitled to 20 peremptory challenges. If the offense charged is punisha-

lenges and was improperly limited to ten such challenges by the Trial Court.

■ We hold that the Trial Court did not err in denying Maestas the benefits of Rule 24(b) Fed.R.Crim.P. in light of the record before us which clearly indicates that from the beginning of this trial the Government was understood not to request or demand capital punishment.

During a pre-trial hearing on a number of motions conducted August 30, 1974, the attorney for the Government explicitly stated:

> Your Honor, I have discussed with [Maestas' counsel and the attorney for a co-defendant] previously some mechanism that we can employ to bind ourselves . . . *What I am frankly trying to get at is the government now, on the record, disclaims the legal position that execution is a possibility upon conviction in this case.* I am willing to stipulate . . . I would encourage the court . . . to rule in whatever fashion it feels appropriate on that issue . . . (Emphasis added).

(T.R. Vol. III, Supp. at 65–66).

The Trial Judge took no formal action nor made any formal ruling at that time. We deem it implicit, however, in the later denial of Maestas' request for 20 peremptory challenges that the Trial Court considered the Government's offer of a stipulation in this regard to be binding.[3] We further note that the Trial Court did

not instruct the jury in anywise as to the possible imposition of the death penalty nor did the Government argue for it.

While Maestas asserts that the statement made by the prosecution, quoted from above, does not rise to a "clear and formal waiver of the death penalty," we think that by informing defense counsel and the Trial Judge, on the record, that no attempt would be made to obtain the death sentence the Government clearly waived its right to later urge capital punishment.

In light of the above circumstances, we hold that this case lost its capital nature as charged in the indictment and Maestas was not improperly denied the 20 peremptory challenges under Rule 24(b). *Compare, United States v. Crowell,* 498 F.2d 324 (5th Cir. 1974); *United States v. McNally,* 485 F.2d 398 (8th Cir. 1973), cert. denied 415 U.S. 978, 94 S.Ct. 1566, 39 L.Ed.2d 874 (1974); *Hall v. United States,* 410 F.2d 653 (4th Cir. 1969), cert. denied 396 U.S. 970, 90 S.Ct. 455, 24 L.Ed.2d 436 (1969); *Loux v. United States,* 389 F.2d 911 (9th Cir. 1968), cert. denied 393 U.S. 867, 89 S.Ct. 151, 21 L.Ed.2d 135 (1968); 11 A.L.R. Fed. 713.

## II.

At trial, the Government's witness Mildred Poncho—one of the alleged rape victims—testified that she had never previously dated Maestas. At the subsequent trial of a co-defendant, however, Miss Poncho admitted that she dated

___

ble by imprisonment for more than one year, the government is entitled to 6 peremptory challenges and the defendant . . . to 10 peremptory challenges.

**3.** The following colloquy from the record reflects that the Trial Court was well aware that had the issue of capital punishment been involved, Maestas would have been entitled to more than 10 peremptory challenges under Rule 24(b). It further reflects that defense counsel understood the tacit position being taken by the Trial Court, i. e., that this was not being considered as a capital case.

> [Defense Counsel]: I want to reserve the right, as far as raising any question of the

number of challenges that we've been allowed as running against the charges. I think the charges are such that, I know that the Court has already ruled as far as this being a capital case, but I want to reiterate that objection that's been given under the present indictment, that we are entitled to the statutory number of challenges, based on a capital case.
> [The Court]: That's 40.
> [Defense Counsel]: 20

(T.R. Vol. IV, Supp. at 25).

Maestas previous to the alleged rape and that she had sexual relations with him on at least one of those occasions. Maestas now asserts that this subsequent testimony constitutes significant "newly discovered evidence" as to the issue of consent, entitling him to a new trial. We disagree.

█ A motion for a new trial is generally not regarded with favor and is granted only with great caution. *United States v. Steel*, 458 F.2d 1164 (10th Cir. 1972); *United States v. Perea*, 458 F.2d 535 (10th Cir. 1972); *United States v. Gleeson*, 411 F.2d 1091 (10th Cir. 1969); *Casias v. United States*, 350 F.2d 317 (10th Cir. 1965). The grant of a motion for a new trial is addressed to the sound discretion of the Trial Court. Denial of the motion will not be reviewed absent a plain abuse of discretion. *United States v. Leyba*, 504 F.2d 441 (10th Cir. 1974), cert. denied 420 U.S. 934, 95 S.Ct. 1139, 43 L.Ed.2d 408; *United States v. Perea, supra*; *King v. United States*, 402 F.2d 289 (10th Cir. 1968).

█ Before a new trial for newly discovered evidence should be granted, the defendant has the burden to show *that the evidence was discovered since trial;* facts from which the Court may infer reasonable diligence on the part of the movant; and that the evidence is not merely cumulative or impeaching but is material and of such a character that on a new trial such evidence would probably produce a different result. *King v. United States, supra*; *Wion v. United States*, 337 F.2d 230 (10th Cir. 1964).

█ Whether a relationship had existed between Miss Poncho and the defendant prior to this incident was clearly within the knowledge of Maestas at the time of trial and consequently evidence of such a relationship cannot be considered "newly discovered." *Compare, United States v. Alper*, 449 F.2d 1223 (3rd Cir. 1971), cert. denied 405 U.S. 988, 92 S.Ct. 1248, 31 L.Ed.2d 453 (1972); *Baca v. United States*, 312 F.2d 510 (10th Cir. 1962), cert. denied 373 U.S. 952, 83 S.Ct. 1682, 10 L.Ed.2d 706 (1963); *United States v. Howell*, 240 F.2d 149 (3rd Cir. 1956); *Johnson v. United States*, 32 F.2d 127 (8th Cir. 1929).

Nor are we convinced by Maestas' bald allegation that he could not have offered this evidence at the time of trial due to the fact that it could only have been elicited from Miss Poncho (such attempt having proved unsuccessful)[4] or by defendant's being forced to waive his privilege against self-incrimination, which he was not required to do.[5]

We hold that the Trial Court did not err in denying Maestas' motion for a new trial on the grounds of newly discovered evidence.

### III. and IV.

During the course of the trial, the prosecution called as witnesses Wilfred Clarence Chavez and John Quintana, seeking to establish by their testimony that Maestas had been seen in the company of the victims in a bar on July 6, 1974, the night prior to the alleged murder-rapes. Both witnesses testified, however, that while they had in fact previously made statements to this effect to Government investigators, they had been confused as to dates at the time they were interviewed and that they now remembered that the occasion when they had seen Maestas with the victims was

---

4. The attempted "impeachment" of Miss Poncho's testimony at Maestas' trial consisted solely of the following questions on cross-examination:

Q. [Defense Counsel]: Have you ever dated Richard Maestas?
A. [Miss Poncho]: No.
Q. You have not?
A. No.
(T.R. Vol. VI, p. 314)

5. As noted in the Government's brief, Maestas made no attempt to further develop the testimony of the Government's witness, Ruby Chavez, who had indicated on direct examination that she was aware of a relationship existing between Maestas and Miss Poncho prior to this incident.

on an evening several nights prior to the alleged incident. The prosecution then proceeded to call Special Agent McCormick and attempted to bring out details of the prior inconsistent statements made by these witnesses. Objections by defense counsel to this attempt were made and sustained.

■ Assuming it was improper for the prosecution to proceed to impeach these witnesses after they had admitted and explained their prior inconsistent statements,[6] we are convinced, after a careful review of the entire record, that the continued efforts by the prosecution to impeach these witnesses and to introduce details of their prior statements was but harmless error. The evidence reflected in their prior statements was at most cumulative of the testimony of other witnesses placing Maestas in the company of Phyllis Estevan and Mildred Poncho on the night of June 6; 1974.[7] It is not every error committed in the trial of a criminal case which requires reversal. A conviction will not be disturbed on appeal where, from a careful examination of the record as a whole, it is apparent that the error was not prejudicial and did not deprive the accused of a substantial right. Rule 52(a) Fed.R. Crim.P., 18 U.S.C.; *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); *United States v. Lemon,* 497 F.2d 854 (10th Cir. 1974); *Woodring v. United States,* 367 F.2d 968 (10th Cir. 1966); *Wright v. United States,* 301 F.2d 412 (10th Cir. 1962).

■ Similarly, we find no merit in Maestas' contention that he was prejudiced as a result of the Trial Court's ruling allowing Special Agent McCormick to remain in the courtroom throughout the trial. The question of whether witnesses should be excluded from the courtroom while not testifying is addressed to the sound discretion of the trial court and is subject to review only upon a showing of abuse of that discretion or manifest injustice. *United States v. Herbert,* 502 F.2d 890 (10th Cir. 1974), cert. denied 420 U.S. 931, 95 S.Ct. 1134, 43 L.Ed.2d 403; *United States v. Stidham,* 459 F.2d 297 (10th Cir. 1972), cert. denied 409 U.S. 868, 93 S.Ct. 168, 34 L.Ed.2d 118 (1972); *Johnston v. United States,* 260 F.2d 345 (10th Cir. 1958), cert. denied 360 U.S. 935, 79 S.Ct. 1454, 4 L.Ed.2d 1547 (1959); *Oliver v. United States,* 121 F.2d 245 (10th Cir. 1941), cert. denied 314 U.S. 666, 62 S.Ct. 124, 86 L.Ed. 533 (1941).

■ Maestas admittedly initially acquiesced in McCormick's presence, but after several attempts by the prosecution to use McCormick to impeach other witnesses, defense counsel objected to his presence on the grounds that he was being used to "coerce" or "intimidate" witnesses. Our review of the record discloses no such willful intent on the part of the Government, nor has Maestas alleged that any specific witness was, in fact, in anywise coerced by McCormick's presence in the courtroom. Further, there is no showing that McCormick's presence changed the testimony of any witness to Maestas' prejudice.[8] In the absence of a showing of prejudice, we find no error arising from the presence of the agent.

## V.

Finally, Maestas claims that he was denied due process as a result of the unconstitutional racial classification established by the statutes under which he and his co-defendants were prosecuted.

**6.** *See, United States v. Eaton,* 485 F.2d 102 (10th Cir. 1973); *Brooks v. United States,* 309 F.2d 580 (10th Cir. 1962) cert. denied, 383 U.S. 916, 86 S.Ct. 907, 15 L.Ed.2d 670 (1966); *Ditrich v. United States,* 243 F.2d 729 (10th Cir. 1957).

**7.** We further note that Maestas requested no limiting instruction from the Trial Court in regard to this alleged error.

**8.** We note that of the witnesses Maestas alleges were "affected" by McCormick's presence, i. e., Wilfred Chavez, John Quintana, Ruby Chavez, and Ray Maestas, Sr., all persisted, basically, in testifying in support of the defendant despite McCormick's presence.

**322**

His challenge in this regard is apparently twofold: (1) that 18 U.S.C. § 2031 establishes a different maximum penalty for a non-Indian convicted of raping an Indian in Indian country (i. e., death) than that established for an Indian convicted for the same offense under 18 U.S.C. § 1153 (i. e., a maximum sentence of life imprisonment);[9] and (2) that because of the above classification, an Indian co-defendant in a rape case such as the one at bar would not be entitled to additional procedural benefits such as those accorded under 18 U.S.C. §§ 3005 and 3432. We need not reach these challenges.[10]

In order to sustain a claimed denial of constitutional rights, one must demonstrate a legal injury. *Maestas v. United States,* 341 F.2d 493 (10th Cir. 1965). We need not consider the argument that a statute makes an unreasonable classification where the defendant fails to show that any such invalid application of the statute to him was involved. *Hines v. Baker,* 422 F.2d 1002 (10th Cir. 1970); *Mull v. United States,* 402 F.2d 571 (9th Cir. 1968), cert. denied 393 U.S. 1107, 89 S.Ct. 917, 21 L.Ed.2d 804 (1969). As noted in our discussion,

*supra,* this case from the outset was not one involving the possible imposition of the death penalty. Hence, Maestas was at no time subject to a different charge, count, *or penalty* other than that which he would have been subjected to were he an Indian.

Nor is Maestas benefited by his argument that the above statutory classification might result in a denial of certain procedural safeguards to an Indian co-defendant in this case. One may not be heard to challenge the constitutionality of a statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the court. *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *United States v. Raines,* 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960); *United States v. Wurzbach,* 280 U.S. 396, 50 S.Ct. 167, 74 L.Ed. 508 (1930).

Finally, there is a serious question as to whether the discriminatory classification challenge raised here constitutes a "case or controversy" within U.S.Const. art. 3, § 1 *et seq.,* in light of the fact that the Government and the Court made it clearly known that the

---

**9.** *See, Sam v. United States,* 385 F.2d 213 (10th Cir. 1967).

**10.** We note, in passing, our decision in *United States v. Analla,* 490 F.2d 1204 (10th Cir. 1974), vacated on other grounds, 419 U.S. 813, 95 S.Ct. 28, 42 L.Ed.2d 40 (1974), wherein we upheld the constitutionality of the racial classification established under 18 U.S.C. § 1153 in an analogous situation:

The test for determination of this equal protection issue under the Fifth Amendment is whether the racial distinction embodied in § 1153 is reasonably related to any proper governmental objective or whether it is invidious or capricious. To be sure, § 1153 is based upon a racial classification. The constitutionality of such a classification, however, is apparent from the history of the relationship between Indians and the federal government. *See Kills Crow v. United States,* 451 F.2d 323 (8th Cir. 1971); *Gray v. United States,* 394 F.2d 96 (9th Cir. 1967). That relationship from the beginning has been characterized as resembling that of a guardian and ward. As an incident of such guardianship the federal government has full authority:

to pass such laws . . . as may be necessary to give to [Indians] full protection in their persons and property, and to punish all offenses committed against them or by them within [federally granted] reservations. *United States v. Thomas,* 151 U.S. 577, 585, 14 S.Ct. 426, 429, 38 L.Ed. 276 (1894). Given such a perspective, we are unable to ascribe to § 1153 an invidious classification, and we conclude that appellant's argument thereon must fail.
490 F.2d 1204 at 1208.
But see contra, *United States v. Cleveland,* 503 F.2d 1067 (9th Cir. 1974).

This court has long recognized that Congress has exclusive plenary legislative authority over Indians and their tribal relations. *Lone Wolf v. Hitchcock,* 187 U.S. 553, 23 S.Ct. 216, 47 L.Ed. 299 (1903); *National Indian Youth Council, Intermountain Indian School Chapter v. Bruce,* 485 F.2d 97 (10th Cir. 1973), cert. denied 417 U.S. 920, 94 S.Ct. 2628, 41 L.Ed.2d 226 (1974); *Wolfe v. Phillips,* 172 F.2d 481 (10th Cir. 1949), cert. denied 336 U.S. 968, 69 S.Ct. 941, 93 L.Ed. 1119 (1949).

death penalty was neither to be sought nor imposed before trial. It is fundamental that federal courts do not render advisory opinions. *Barr v. Matteo,* 355 U.S. 171, 78 S.Ct. 204, 2 L.Ed.2d 179 (1957); *Oklahoma City, Oklahoma v. Dulick,* 318 F.2d 830 (10th Cir. 1963).

Mr. Justice White, writing for the Court in *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), laid down these clear guidelines-criteria relating to "case or controversy":

> Plaintiffs in the federal courts "must allege some threatened or actual injury resulting from the putatively illegal action" . . . abstract injury is not enough. . . . *The injury or threat of injury must be both "real and immediate" not "conjectural" or "hypothetical".* [Emphasis supplied]. 414 U.S. 488 at 493–494, 94 S.Ct. at 675.

We affirm.