Michael William STRAND,
Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 83–2102.

United States Court of Appeals,
Tenth Circuit.

Dec. 23, 1985.

James N. Barber, Barber, Verhoef & Yocom, Salt Lake City, Utah, for plaintiff-appellant.

Brent D. Ward, U.S. Atty., Samuel Alba and Stewart C. Walz, Asst. U.S. Attys., Salt Lake City, Utah, for defendant-appellee.

Before BARRETT, McWILLIAMS and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a), Tenth Circuit R. 10(e). The cause is therefore submitted without oral argument.

Michael William Strand (Strand) appeals from an order of the district court denying his habeas corpus petition filed in accordance with 28 U.S.C. § 2255 (§ 2255).

Strand was convicted after a jury trial of subscribing a false income tax return in violation of 26 U.S.C. § 7206(1) and fraud in the sale of securities in violation of 15 U.S.C. §§ 77q(a) and 77x. On appeal Strand's conviction was affirmed. *United States v. Strand,* 617 F.2d 571 (10th Cir. 1980), *cert. denied,* 449 U.S. 841, 101 S.Ct. 120, 66 L.Ed.2d 48 (1980). In *United States v. Strand, supra,* we held, *inter alia,* that Strand was not entitled to a severance, the court did not err in detailing forth the burden of proof on the charge of fraud in the sale of securities, and that the evidence was sufficient to support a conviction for fraud in the sale of securities.

Thereafter, Strand filed a habeas corpus petition in accordance with § 2255 and simultaneously moved for a new trial. Strand's motion for a new trial was predicated upon newly discovered evidence which allegedly established the Government's failure to disclose, prior to trial, exculpatory evidence as required by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and the Jencks Act, 18 U.S.C. § 3500. Specifically, Strand alleged that a memorandum of interview with one Bruce Jensen, a witness who testified for the Government at trial, and an interview with one Carl Martin, who did not testify at trial, were not turned over to him prior to trial in violation of *Brady v. Maryland* and the Jencks Act.

After a hearing the district court denied Strand's § 2255 petition and his motion for a new trial. In so doing, the district court found that the memorandum of the Jensen interview was not *Brady* material and that Martin's statement was neither Jencks Act nor *Brady* material. On appeal we affirmed the district court and held:

> In the instant case, it is arguable that neither Jensen's nor Martin's statements to Harrington are within the purview of the Jencks Act or the *Brady v. Maryland* rule. Jensen's statement to Harrington, as memorialized by Harrington, is, to us, unclear and difficult to follow and is not necessarily inconsistent with Jensen's testimony at trial. But when these two statements are placed in the context of the earlier trial, we agree with the district court that any possible error in this regard was harmless and would not have changed the outcome of the trial.... Here, the newly discovered evidence, which, incidentally, related primarily to the tax fraud charge contained in count one of the indictment, and had no direct relationship to the securities fraud charge contained in count two, was impeaching and cumulative in its character, and, as did the district court, we believe disclosure of the evidence would

not have changed the outcome of the trial.

*United States v. Strand*, decided August 27, 1982, Sl.Op. at pp. 6–7.

On November 23, 1982, Strand filed a petition with the district court under Fed. Rules. Cr.Proc. rule 35, 18 U.S.C. seeking a reduction of his sentence and a second petition under § 2255. Strand's § 2255 petition was based on the Government's alleged failure to turn over certain exculpatory evidence, a letter, prior to trial. On either December 22, 1983, or April 21, 1983,[1] Strand "filed with the Court a 'green folder' containing numerous additional exculpatory items which were in the possession of the Government prior to trial but which had never been divulged" (Appellant's Brief at 3). The district court heard oral arguments on Strand's petitions on May 13, 1983. On August 3, 1983, the district court entered an order denying Strand's § 2255 petition and granting Strand's Rule 35 petition for relief from sentence:

> The present section 2255 application, filed in November, 1982, is based on the alleged failure of the government to turn over to the defense before trial a letter from Agent Ronald L. Maley to C. Evan Wride, chief of the Intelligence Division of the Internal Revenue Service. The letter contains the description of an interview conducted by the F.B.I. with Peter James Gushi, an individual supposedly involved in some of the transactions forming the basis of the government's case against Mr. Strand at trial. The petitioner Strand alleges that the failure of the government to turn over this letter violates both the Jenks (sic) Act, 18 U.S.C. § 3500, and *Brady v. Maryland*, 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215] (1963).
>
> After reading the memoranda and exhibits and hearing the oral arguments of the parties, the court concludes that if the letter is Jenks (sic) Act material, the government's failure to give it to the defendant was harmless error. Before a

1. The briefs set forth conflicting dates.

new trial may be granted on such newly discovered evidence, the defendant must show, *inter alia,* that the newly discovered evidence is not merely cumulative or impeaching in nature, but is so material and of such character that a new trial would probably produce a different result. *United States v. Maestas,* 523 F.2d 316, 320 (10th Cir.1975). The letter from Ronald L (sic) Maley to C. Evan Wride is not of such character that it is at all likely to produce a different result at a new trial. Accordingly, the motion pursuant to section 2255 should be denied.

\* \* \* \* \* \*

Mr. Strand has multiple sclerosis. His incarceration in federal prison resulted in serious manifestations of this disease, including partial blindness. The disease had not yet been diagnosed at the time of his sentencing. Consequently, at that time basic medical facts of serious consequences were in existence but unknown to the sentencing court, which would have influenced the court against a sentence of substantial confinement. A sentence based on false information is an illegal sentence. *See, Townsend v. Burke,* 334 U.S. 736 [68 S.Ct. 1252, 92 L.Ed. 1690] (1948); *Baker v. United States,* 388 F.2d 931 (4th Cir.1968). The sentence in this case, which is based on a material misapprehension of basic facts and which the court is fully persuaded is erroneous in view of correct facts now come to light, meets the definition of an illegal sentence. A legal sentence contemplates that basic facts of substantive importance upon which the court grounds its decision are correct. When they are not correct or when the court is uninformed of such facts at the time of sentencing, it should not shirk the responsibility to correct the sentence if the sentence is wrong in light of those facts.

\* \* \* \* \* \*

In view of these circumstances, the court concludes that Mr. Strand's sentence should be reduced.

R., Vol. I at pp. 125–127.

Strand filed a notice of appeal from the district court's denial of his § 2255 motion on September 1, 1983 and his appeal was docketed on September 9, 1983. On November 17, 1983, we entered a mandate dismissing the appeal for failure to prosecute; Strand filed a motion to reinstate the appeal on December 19, 1983. On December 29, 1983, Strand filed a motion to supplement the district court record alleging that "though there had been a mass ["green folder"] of exculpatory documentary evidence attached to the original petition, the opinion of the District Court referred to only one letter" (Appellant's Brief at 4) and that "The purpose of the motion was to determine whether or not the Court had considered the supplemental information." *Id.*

The district court declined to hear Strand's motion, since Strand had already filed his notice of appeal. We reinstated Strand's appeal on January 10, 1984. On February 29, 1984, Strand filed a petition with this court asking us to remand to the district court to give the district court the opportunity to clearly specify whether it had considered all of the relevant data in its August 3, 1983, decision. We returned the motion unfiled noting that since the record had not been forwarded to us, there was no need to remand to the district court. On May 14, 1984, Strand filed a renewed motion to supplement the record with the district court. The district court denied Strand's motion on December 26, 1984, and this appeal followed.

On appeal Strand contends that (1) the district court erred by failing to consider documentary evidence of Government misconduct submitted as exhibits to appellant's petition and by supplemental addendum thereto and (2) the district court applied the wrong burden of proof in denying his § 2255 petition.

I.

Strand contends that the district court erred in failing to consider documentary evidence, i.e., a "green folder" containing some 26 exhibits, submitted as exhibits

to his § 2255 petition by supplemental addendum thereto. The Government, in answer, argues that none of the documents were ever offered and never received in evidence. As such, the Government argues, Strand did not meet his burden of proof under § 2255 by introducing evidence in support of his allegations. In response, Strand argues that these documents were properly before the court as exhibits to pleadings and should have been considered by the court even if the documents were not formally admitted into evidence.

Neither the "green folder" nor the 26 exhibits are in the record before us; nor for that matter, does the record contain all of Strand's many § 2255 pleadings which we earlier chronicled. Under such circumstances we cannot consider Strand's allegations that the district court failed to consider certain documentary evidence. A similar problem arose in Strand's first appeal, *United States v. Strand, supra,* in which we held:

> Whereas Strand attacks the sufficiency of the evidence under Count II vis-a-vis the participation of Bruce Allen Jensen as an officer of Associated Underwriters, he has failed to cause to be transmitted to this Court as part of the record on appeal, a transcript of the trial proceedings. *See: United States v. Hubbard,* 603 F.2d 137 (10th Cir.1979). Thus, we decline to consider any sufficiency of evidence contentions "since we cannot make a meaningful evaluation of the claim of error". *Herron v. Rozelle,* 480 F.2d 282, 288 (10th Cir.1973).

617 F.2d at 578.

## II.

Strand contends that the district court applied the wrong burden of proof in denying his § 2255 petition. Strand argues that continued reliance on *United States v. Maestas,* 523 F.2d 316 (10th Cir.1975) and *Wion v. United States,* 337 F.2d 230 (10th Cir.1964) to deny relief in cases where the newly discovered evidence did not originate from a neutral source, but is shown to have been in the possession of the Government prior to trial is improper under *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Strand quotes *Agurs* for the principle that:

> The fact that such evidence was available to the prosecutor and not submitted to the defense places it in a different category than if it had simply been discovered from a neutral source after trial. For that reason the defendant should not have to satisfy the severe burden of demonstrating that newly discovered evidence probably would have resulted in acquittal.

427 U.S. at 111, 96 S.Ct. at 2401. The above quoted language *selected* by Strand is, however, incomplete. Following the quoted language the *Agurs* opinion read:

> If the standard applied to the usual motion for a new trial based on newly discovered evidence were the same when the evidence was in the State's possession as when it was found in a neutral source, there would be no special significance to the prosecutor's obligation to serve the cause of justice.
>
> On the other hand, *since we have rejected the suggestion that the prosecutor has a constitutional duty routinely to deliver his entire file to defense counsel, we cannot consistently treat every nondisclosure as though it were error.* It necessarily follows that the judge should not order a new trial every time he is unable to characterize a nondisclosure as harmless under the customary harmless-error standard. Under that standard when error is present in the record, the reviewing judge must set aside the verdict and judgment unless his "conviction is sure that the error did not influence the jury, or had but very slight effect." *Kotteakos v. United States,* 328 U.S. 750, 764 [66 S.Ct. 1239, 1247, 90 L.Ed. 1557 (1946)]. Unless every nondisclosure is regarded as automatic error, the constitutional standard of materiality must impose a higher burden on the defendant.
>
> The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such

a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. *It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed.* This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt. 427 U.S. at 111–113, 96 S.Ct. at 2401–2402 (footnotes omitted) (emphasis added). *Aqurs* was recently clarified in *United States v. Bagley,* —— U.S. ——, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) in which the court opined that in "cases of prosecutorial failure to disclose evidence favorable to the accused: the evidence is rational only if there is reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. At ——, 105 S.Ct. at 3384. In *Bagley* the court defined a "reasonable probability" as a "probability sufficient to undermine confidence in the outcome." Id.

Applying this standard to the facts herein, we hold that even if the district court did limit its consideration of Strand's petition to our decisions in *United States v. Maestas* and *Wion v. United States,* error, if present, was harmless. The omitted letter from Agent Maley to C. Evan Wride, *supra,* did not "create a reasonable doubt that did not otherwise exist" in violation of *Aqurs. See also United States v. Sutton,* 767 F.2d 726 (10th Cir.1985).

AFFIRMED.

McKAY, Circuit Judge, dissenting:

A fundamental precept in our system of jurisprudence is that "[s]ociety wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." *Brady v.* *Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963).

Once a prosecutor determines that evidence in the government's possession is favorable to the defendant, either because it is arguably exculpatory or bears on the credibility of a government witness, he must resolve any doubts about the materiality of the evidence in favor of the accused, erring on the side of disclosure. *United States v. Bagley,* —— U.S. ——, 105 S.Ct. 3375, 3392, 87 L.Ed.2d 481 (1985) (Marshall, J., dissenting). In this case, rather than disclose evidence with favorable implications for the defense, the prosecutor chose to withhold it and take the chance that, if the evidence were discovered by the defendant after trial, it would be determined by the reviewing court to be immaterial. As a result, this case is before us for the third time, appellant once again having discovered documentary evidence that failed to emerge from the government's files prior to trial. Moreover, the jury that convicted appellant was deprived of the opportunity to decide for itself whether the nondisclosed evidence was important.

To my mind, the government's failure to disclose the so-called "Gushi letter" requires reversal of defendant's conviction on Count I of the indictment. Moreover, appellants' failure to submit the twenty-six documents as part of the appellate record does not, in my view, present a procedural bar to our deciding whether the district court should have considered those documents in ruling on appellant's petition. Accordingly, I must dissent.

I.

Appellant, Michael William Strand, was indicted on July 12, 1978, for subscribing a false tax return and committing fraud in the sale of securities. An additional charge of interstate transportation of stolen property was dismissed before the case went to the jury.

The government charged that during 1973 appellant engaged in numerous brokerage transactions involving the purchase and sale of common shares of Epoch Corpo-

ration from which he received substantial gross income, as defined by the Internal Revenue Code, which he failed to report on his 1973 tax return. Appellant effectuated these transactions through his own accounts and through various nominee accounts at different brokerage houses. The government charged that, by using the various accounts, appellant was able to control the purchase and sale "prices" of Epoch stock and create the appearance of an active market for its securities. The government also alleged that appellant received $29,000 in finder's fees in 1973 which he did not report on his 1973 income tax return. The government's case was based, in large part, on the testimony of Bruce Jensen.

Appellant defended the charge that he had subscribed a false income tax return on the basis that he had actually suffered a loss of $7,000 in 1973 on the Epoch transactions; that he did not realize that he had any tax reporting obligation until after 1973; and that, accordingly, in January 1975, he filed a 1973 tax return.

Appellant defended the securities fraud charge by arguing that he took over trading in Epoch Corporation when he thought its proposed merger with an insurance company would cause its stock to increase in value; that the sale of Epoch's stock, giving rise to the charges, was actually initiated by Bruce Jensen; that Jensen managed the entire transaction and was a principal actor throughout the transaction; that appellant was not aware that his account had been improperly used by Jensen; and that, because Jensen was a principal in the transaction and wholly aware of the nature of the transaction, there was no fraud perpetrated on Jensen.

The jury returned a verdict of guilty on both counts. Appellant was sentenced to three years for subscribing a false tax return and five years for securities fraud, with all but six months suspended. Appellant appealed his conviction to this court, and we affirmed. *United States v. Strand*, 617 F.2d 571 (10th Cir.1980). However, because the trial judge had instructed the jury that the government need only prove one of the six alleged acts set forth in Count II of the indictment (the securities fraud charge), where another district judge had previously charged the government with proving all of the allegations in Count II, I dissented. In my view, the trial court permitted the government to "change the rules of the game" after appellant had presented his defense, thereby depriving him of the right to "be informed of the nature and cause of the accusation" against him. U.S. Const. amend. VI.

Thereafter, appellant filed a motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure and for habeas corpus relief under 28 U.S.C. § 2255 (Supp.1985). The basis for the motion was newly discovered evidence that appellant alleged was exculpatory and that had been in the government's possession prior to trial but was never made known to the defense. Following an evidentiary hearing, the district court denied the motion, and appellant appealed. We affirmed in *United States v. Strand*, No. 81–1697, slip op. (10th Cir. Aug. 27, 1982) (unpublished opinion). We noted that it was "arguable" that the newly discovered evidence was not within the purview of the Jencks Act, 18 U.S.C. § 3500 (1985), or the *Brady* rule, but concluded that

> before a new trial may be granted on the ground of newly discovered evidence, the defendant must show, *inter alia*, that the newly discovered evidence is not merely cumulative or impeaching in nature, but is so material and of such character that a new trial would probably produce a different result. [*United States v. Maestas*, 523 F.2d 316, 320 (10th Cir.1975)]. Here, the newly discovered evidence, which, incidentally, related primarily to the tax fraud charge contained in count one of the indictment, and had no direct relationship to the securities fraud charge contained in count two, was impeaching and cumulative in its character, and, as did the district court, we believe disclosure of the evidence would not have changed the outcome of the trial.

*Strand, supra*, at 7.

Subsequently, on November 23, 1982, appellant again filed a petition for habeas

corpus relief pursuant to 28 U.S.C. § 2255 (Supp.1985) and a motion for reduction of sentence under Rule 35 of the Federal Rules of Criminal Procedure. As grounds for habeas corpus relief, appellant again alleged that he had become aware of evidence that had not been disclosed to the defense prior to trial in violation of the Jencks Act * and *Brady v. Maryland, supra.* Thereafter, appellant filed an amended petition, attached to which was a green folder containing twenty-six exhibits.

On May 13, 1983, a hearing was held in the district court on both of appellant's motions. At the conclusion of the testimony, appellant's counsel presented arguments to the court regarding the so-called "Gushi letter" and other documentary evidence contained in the green folder. When the Assistant United States Attorney suggested that the court should only consider the "Gushi letter" because the other documents had not been formally introduced into evidence, the court stated:

> Well, respond as you may think is appropriate. I have heard what you have said that it hasn't been received as an exhibit. It looks like an exhibit. It has tabs like an exhibit. But, I don't know if it is already in the record. I would just have to look to see if the pleadings and/or the memo that may be in the file identify it as in the record.

Record, supp. vol. 3, at 85–86.

On August 3, 1983, the district court entered its memorandum opinion, granting appellant's motion for reduction of sentence but denying his motion for habeas corpus relief. The court's opinion makes no reference to any of the twenty-six documents contained in the green folder. In determining whether the government's nondisclosure of the "Gushi letter" requires reversal of appellant's conviction, the district court relied on *United States v. Maestas,* 523 F.2d 316 (10th Cir.1975). The court concluded that the "Gushi letter" is "not of such character that it is at all likely to produce a different result at a new tri-

al." Record, vol. 1, at 126. As the majority's opinion indicates, appellant's subsequent efforts to supplement the district court record, or to ascertain whether the district court considered the twenty-six documents, have been to no avail.

## II.

Appellant argues, and the government concedes, that, in relying on *United States v. Maestas, supra,* the district court applied the incorrect legal standard in deciding whether the newly discovered evidence warrants reversal of appellant's conviction. Rather than confronting this issue directly, the majority holds that "even if the district court did limit its consideration to our decisions in *United States v. Maestas* and *Wion v. United States,* error, if present, was harmless."

First, we should note that the district court's reliance on *Maestas* is understandable in view of our citation to that case in appellant's prior appeal. There, in addressing appellant's claim that the government's failure to disclose *Brady* material and Jencks Act statements warranted a new trial, we cited *Maestas* for the proposition that a new trial should not be granted on grounds of newly discovered evidence unless the evidence is "of such a character that a new trial would probably produce a different result." *United States v. Strand,* No. 81–1697, slip op. at 7 (10th Cir. Aug. 27, 1982). Our reliance on *Maestas* was in error, however, because the newly discovered evidence in *Maestas* had not been in the possession of the prosecutor prior to trial. Where the prosecutor fails to divulge material evidence that is favorable to the defendant, despite the defendant's request for disclosure, the constitutional rule of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), is invoked, and the defendant is not required to meet the severe burden of showing that the evidence, had it been disclosed, "probably would have resulted in acquittal." *United States v. Librach,* 602 F.2d 165, 167 (8th Cir.1979) (quoting *United States v.*

---

* On appeal, appellant concedes that the newly discovered evidence is not within the purview of the Jencks Act, 18 U.S.C. § 3500 (1985), but continues to· assert that the evidence is *Brady* material.

*Agurs,* 427 U.S. 97, 111, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976)). While our disposition of the issues raised in appellant's prior appeal is the law of the case, *Drachenberg v. Canal Barge Co., Inc.,* 621 F.2d 760, 762·(5th Cir.1980), we should not compound our error by allowing the district court's reliance on *Maestas* to go uncorrected.

The constitutional rule of discovery announced in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), requires the government to disclose to the defense, prior to trial, evidence that is both favorable to the accused and "material either to guilt or to punishment." *Id.* at 87, 83 S.Ct. at 1196. As the Supreme Court explained in *United States v. Agurs,* 427 U.S. 97, 104, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976): "A fair analysis of the holding in *Brady* indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial."

In *United States v. Bagley,* — U.S. ——, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Supreme Court abandoned the *Agurs* standard for determining materiality and held that, regardless of the specificity of the defendant's request for disclosure, "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* at 3384.

While the new standard announced in *Bagley* does not turn on the specificity of the accused's request for disclosure of *Brady* material, Justice Blackmun observed in *Bagley* that reviewing courts may

> consider directly any adverse effect that the prosecutor's failure to respond might have had on the preparation or presentation of the defendant's case. The reviewing court should assess the possibility that such effect might have occurred in light of the totality of the circumstances and with an awareness of the difficulty of reconstructing in a post-trial proceeding the course that the defense and the trial would have taken had the defense

> not been misled by the prosecutor's incomplete response.

*Id.*

Applying the *Bagley* standard to the facts of this case, I am compelled to conclude that the government's failure to disclose the "Gushi letter" to the defense, prior to trial, undermines confidence in the outcome of the trial, at least insofar as the charge of subscribing a false tax return is concerned. In relevant part, the "Gushi letter" lends support to appellant's contention that the $20,000 finder's fee attributed to appellant as taxable income was actually paid and attributable as income to Carl Martin. In my opinion, there is a reasonable probability that this evidence, had it been disclosed to the defense, would have affected the jury's verdict on Count I of the indictment. Certainly, the disclosure of this evidence would have at least had a significant impact on defense counsel's strategy in presenting the defense.

The government plays down the significance of the "Gushi letter," suggesting that, because the letter refers to "Martin and his associates," it is consistent with the government's theory that the finder's fee was paid directly to Mr. Martin as appellant's nominee. However, the letter is at least equally supportive of appellant's contention that the $20,000 finder's fee was attributable as income to Carl Martin. While it is difficult to estimate what impact the "Gushi letter" might have had on the jury's decision, it is not the prosecutor's function "to assume the role of the jury, and to decide whether certain evidence will make a difference. In our system of justice, that decision properly and wholly belongs to the jury." *Bagley,* 105 S.Ct. at 3394 (Marshall, J., dissenting).

Insofar as the "Gushi letter" might have been used to impeach the trial testimony of Bruce Jensen, the government's chief witness, the letter is not sufficiently contradictory to undermine my confidence in the jury's verdict on Count II of the indictment. And, because the substance of the letter does not directly pertain to the securities transactions which formed the basis for Count II, I am convinced that, while the

letter is material to Count I of the indictment, its disclosure prior to trial would not have affected the jury's decision regarding Count II of the indictment.

### III.

Appellant also assigns as error the district court's failure to consider the twenty-six documents that were attached as exhibits to appellant's amended petition. However, because appellant has not included the documents in the appellate record, the majority takes the position that we are precluded from reviewing this question. The majority compares this procedural "problem" to the one that arose in appellant's first appeal, where we refused to consider his "sufficiency of the evidence" claim because he had failed to submit a transcript of the trial proceedings as part of the record on appeal. Of course, in appellant's first appeal, the absence of the trial transcript in the appellate record made it impossible for us to determine whether the evidence was legally sufficient. Here, in contrast, there is no reason for us to examine the omitted documents to decide whether the district court committed what is essentially a procedural error. Accordingly, I would not hesitate to reach the merits of this issue.

While I concede that it was appellant's duty to ensure that the documents were properly before the district court for its consideration, I believe that fundamental notions of fairness mandate that appellant be given an opportunity to have the documents reviewed by the district court. To deny appellant this right on the hypertechnical ground that the documents were not formally introduced at the evidentiary hearing unduly emphasizes form over substance. As represented to this court in appellant's brief, at least some of the twenty-six documents are clearly *Brady* material. The government does not challenge this fact or argue that the documents were disclosed prior to trial. Instead, the government opposes a remand simply because the exhibits were not formally introduced at the evidentiary hearing. Because of my deep concern for the interests sought to be protected by *Brady v. Mary-*

*land, supra,* I would allow appellant to supplement the district court record, if necessary, and remand the case so that the district court could evaluate the twenty-six documents under the standard set forth in *United States v. Bagley, supra.*

I might add that, in light of my dissent in appellant's first appeal, I believe appellant's conviction on Count II of the indictment is already of questionable validity. Consequently, nondisclosed evidence of relatively minor importance would be sufficient to create a reasonable doubt as to appellant's guilt on Count II of the indictment. *United States v. Agurs,* 427 U.S. at 113, 96 S.Ct. at 2402.