**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-4550

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

CORNELL WINFREI MCCLURE, a/k/a Droopy,

Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Deborah K. Chasanow, District Judge. (CR-01-367)

Submitted: May 14, 2007                    Decided: July 10, 2007

Before MICHAEL and DUNCAN, Circuit Judges, and Frank D. WHITNEY, United States District Judge for the Western District of North Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

Francis A. Pommett, III, LAW OFFICES OF NATHANSON & POMMETT, P.C., Baltimore, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, James M. Trusty, Assistant United States Attorney, Bryan Foreman, Assistant United States Attorney, Theodore M. Cooperstein, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Cornell Winfrei McClure was convicted on several criminal counts relating to the kidnapping and murder of Tessa Mae Osborne on federal property and sentenced to life imprisonment. See 18 U.S.C. §§ 924(c), 1111, 1201(a)(2). On appeal, McClure argues that the death penalty violates customary international law in contravention of the Eighth Amendment and that the Federal Death Penalty Act (the "FDPA") offends the Indictment Clause of the Fifth Amendment. Because McClure did not receive a death sentence, however, we may not consider his challenges to the death penalty lest we issue an advisory opinion in violation of Article III of the United States Constitution. Accordingly, we affirm his conviction and sentence.

I.

The evidence adduced at trial, which is consistent with a confession McClure now recants, suggests that McClure and co-defendant Rufus J. Millegan, Jr., killed Osborne in retaliation for the robbery of Millegan by certain of Osborne's acquaintances. As Osborne was walking to work on the afternoon of May 1, 2001, McClure and Millegan picked her up in a borrowed vehicle and drove her to Millegan's apartment, where Millegan retrieved two handguns. The duo then drove Osborne to the Beltsville Agricultural Research Center, an area within the territorial jurisdiction of the United

2

States.  As the three exited the vehicle, McClure reached into Millegan's pocket, extracted one of the handguns, and shot Osborne. As Osborne ran, McClure and Millegan continued firing until the handguns were empty of ammunition.  McClure and Millegan fled, leaving Osborne behind.  Osborne died as a result of the gunshot wounds.

McClure was arrested shortly thereafter and confessed to the crime.  The government informed McClure of its intention to seek the death penalty.  McClure then filed a series of motions challenging the constitutionality of the death penalty, which the district court denied.  After a lengthy colloquy with the court to ensure the voluntariness of the waiver, McClure waived his right to a jury trial.  The district court found McClure guilty on all counts and sentenced him to life imprisonment without release.

## II.

On appeal, McClure resurrects the challenges to the death penalty that he introduced before his trial.  First, McClure argues that imposition of the death penalty is necessarily "cruel and unusual" in violation of the Eighth Amendment.  McClure notes that the Supreme Court increasingly has cited customary international law to inform its analysis in death-penalty cases.  See, e.g., Roper v. Simmons, 543 U.S. 551, 575-78 (2005) (finding confirmation for its decision to abolish the death penalty for juveniles in the

3

fact that the United States remained the only county in the world to contemplate the execution of juveniles); Atkins v. Virginia, 536 U.S. 304, 316 n.21 (2002) (suggesting that "the world community['s]" disapproval of "the imposition of the death penalty for crimes committed by mentally retarded offenders . . . lends further support to [the Court's] conclusion that there is a consensus" against such imposition). Because the United States is now the only Western nation to implement the death penalty, McClure reasons, the death penalty per se violates customary international law and should be considered to be in contravention of the Eighth Amendment.

Second, McClure argues that the FDPA facially violates the Indictment Clause of the Fifth Amendment: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." McClure argues that Ring v. Arizona, 536 U.S. 584 (2002), requires that any capital indictment mention at least one aggravating factor to satisfy the Fifth Amendment. See United States v. Higgs, 353 F.3d 281, 297-98 (4th Cir. 2003) (reading Ring to require that such factors appear in the indictment). But see United States v. Wills, 346 F.3d 476, 501 (4th Cir. 2003) (reading Ring not to require aggravating factors in the indictment). Though McClure concedes that his own indictment did include the necessary aggravating factors, he nevertheless argues that the FDPA provides no authorization or

4

mechanism for a grand jury to consider aggravating factors. Therefore, he concludes, the FDPA necessarily violates <u>Ring</u> and is unconstitutional.

We do not reach the merits of either of McClure's constitutional arguments, however, because another constitutional provision prevents us from reaching them: the Article III prohibition against advisory opinions.

## III.

Article III, Section 2 provides, in relevant part, that "[t]he judicial power shall extend to all cases, in law and equity, arising under this Constitution, the laws of the United States, and treaties made, . . . [and] to controversies to which the United States shall be a party." More succinctly, "the exercise of the judicial power is limited to 'cases' and 'controversies.'" <u>Muskrat v. United States</u>, 219 U.S. 346, 356 (1911). The Supreme Court has developed a number of constitutional justiciability doctrines from the text of Article III, Section 2, including the prohibition against advisory opinions, the political question doctrine, and the doctrines of standing, ripeness, and mootness. <u>See</u> Erwin Chemerinsky, Federal Jurisdiction § 2.1 (4th ed. 2003).

Underpinning all of these doctrines is the prohibition against advisory opinions. The Court has developed two criteria that must be satisfied to ensure that a case does not call for an advisory

opinion.  First, the case must pit against each other "'adverse parties whose contentions are submitted to the court for adjudication.'"  Muskrat, 219 U.S. at 357 (quoting In re Pacific Ry. Comm'n, 32 F. 241, 255 (C.C.N.D. Cal. 1887)).  Second, a decision in the case must be likely to have some effect on the dispute.  See, e.g., Chi. & S. Air Lines v. Waterman S.S. Corp., 333 U.S. 103, 113 (1948) (refusing to review certain Civil Aeronautics Board decisions because the President could disregard or modify the judicial rulings).

This court has had occasion to apply this second criterion. For example, in United States v. Baker, 45 F.3d 837 (4th Cir. 1995), the defendant challenged the constitutionality of conducting via video conference a mental competency hearing pursuant to 18 U.S.C. § 4245.  Id. at 840.  The parties agreed that whatever the court's ruling, it would also be binding on related hearings held pursuant to 18 U.S.C. § 4246.  Id. at 840 n.1.  The court expressly rejected the invitation to rule on the constitutionality of a video-conference hearing under § 4246: "Because there was no commitment hearing in this case initiated pursuant to section 4246 on appeal, any holding we might make with respect to section 4246 would be an advisory opinion."  Id.  The court therefore held that "the parties cannot, by virtue of their 'stipulation,' confer jurisdiction on this Court to issue an advisory opinion."  Id. Similarly, this court has also declined to rule on the

6

constitutionality of a statute that had been materially revised since the litigation was initiated. See 11126 Baltimore Blvd. v. Prince George's County, 924 F.2d 557, 557-58 (4th Cir. 1991) (holding that any decision on the older version of the statute would offer only illusory relief because the municipality could simply rely prospectively on the newer version).

The Tenth Circuit has applied the prohibition against advisory opinions to facts bearing some resemblance to the case at bar. In United States v. Maestas, 523 F.2d 316 (10th Cir. 1975), the defendant, a non-Indian, was charged in federal court with the rape of two Indian women in Indian country. Id. at 318. The statutory schema established a maximum penalty of death for a non-Indian convicted of such a rape, 18 U.S.C. § 2031, but a maximum penalty of life imprisonment for an Indian convicted of the same crime, 18 U.S.C. § 1153. Maestas, 523 F.2d at 322. Because the government did not seek the death penalty, however, the court suggested that to issue a ruling regarding the disparate punishments possible for Indians and non-Indians would constitute the rendering of an advisory opinion. Id. at 322-23.

This criterion, that a decision must be likely to have some effect on the dispute, has been compared to the redressability prong of the standing inquiry. For example, in City of Los Angeles v. Lyons, 461 U.S. 95 (1983), the Supreme Court linked satisfaction of the redressability prong to the assurance that the case "does

7

not entail the issuance of an advisory opinion . . . and that the exercise of a court's remedial powers will actually redress the alleged injury." Id. at 129. See also Chemerinsky, supra, § 2.2 (noting the centrality of the prohibition against advisory opinions by highlighting how "several of the other justiciability doctrines," including the redressability prong of the standing inquiry, "prevent review where there is not a sufficient likelihood that the federal court decision will make some difference").

It seems axiomatic that McClure should not be permitted to challenge the constitutionality of the death penalty in light of the fact that he received only a life sentence. Recognizing this, McClure argues that the mere possibility of his receiving the death penalty created an injury of constitutional magnitude that a favorable ruling on appeal would redress. McClure insists, without evidence, that he would have been less likely to be convicted if tried before a jury, but was less likely to receive the death penalty following a bench trial. Thus, the apprehension of a possible death sentence motivated McClure to alter his trial strategy, waiving his right to a jury trial and instead submitting to a bench trial. Were this court to agree, strike down the death penalty under either of his arguments, and grant him a new trial,

8

McClure concludes, he would not waive his right to a jury trial and would have a better chance of securing an acquittal.*

McClure's chain of suppositions invites us to indulge in sophistry. McClure does not challenge the voluntariness of his waiver of his right to a jury trial. Nor does McClure challenge the sufficiency of the evidence undergirding his convictions. Nevertheless, his argument would require us to find that his waiver of a jury trial, however knowing, was fatally infected by an imbalance of probabilities for which McClure offers no support. Allowing McClure to proceed would also require our credulous acquiescence in the speculation that he would be substantially more likely to be acquitted in his new trial before a jury, notwithstanding the unassailed and unassailable evidence in the record supporting his conviction.

The absence of any tenable connection between a decision on the merits and the possibility of meaningful relief for McClure compels us to reject his appeal. Article III of the Constitution

---

*McClure analogizes his situation to that of the defendants in United States v. Jackson, 390 U.S. 570 (1968). In Jackson, the Supreme Court construed a federal kidnapping statute to allow for imposition of the death penalty only if a defendant were tried before a jury. Id. at 581. If instead a defendant were to choose a bench trial, the judge could not impose the death penalty. Id. The Court found the statute to impose an unconstitutional burden on the defendants' right to a jury trial because it "chill[s] the assertion of constitutional rights by penalizing those who choose to exercise them." Id. McClure's waiver, however, does not present the same issue as that in Jackson absent evidence that McClure would indeed have been "penaliz[ed]" had he not waived his right to jury trial. See id.

empowers us only to rule where we would have effect.  <u>See</u> <u>Baker</u>, 45 F.3d at 840; <u>11126 Baltimore Blvd.</u>, 924 F.2d at 557-58.  We do not find that McClure has shown that a favorable decision poses a nonnegligible, let alone substantial, likelihood of affording him relief.  Without such likelihood, we are constrained from issuing what would be an advisory opinion.

## IV.

In light of the foregoing, we are without jurisdiction to consider McClure's death-penalty challenges on their merits. Because McClure presents no other arguments on appeal, we affirm his conviction and sentence.

<u>AFFIRMED</u>