UNITED STATES of America, Plaintiff-Appellee,

v.

Willie Eddie WARHOP, Defendant-Appellant.

No. 83–1569.

United States Court of Appeals, Tenth Circuit.

April 18, 1984.

Gene Stipe, Oklahoma City, Okl. (Anthony M. Laizure, McAlester, Okl., with him on the brief) of Stipe, Gossett, Stipe, Harper, Estes, McCune & Parks, Oklahoma City, Okl., for defendant-appellant.

Donn F. Baker, Asst. U.S. Atty., Muskogee, Okl. (Gary L. Richardson, U.S. Atty., Muskogee, Okl., with him on the brief), for plaintiff-appellee.

Before DOYLE, McKAY and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Willie Warhop appeals his conviction for conspiracy to distribute marijuana, claiming that the Government twice violated the discovery procedures established by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny. We have carefully reviewed the procedures followed at trial. We find no reversible error.

## I.

The first alleged *Brady* violation arose out of the Government's failure to produce before trial an investigative report of the Oklahoma State Bureau of Investigation (OSBI). During cross-examination of Government witness Perry Howard, defense counsel requested all Jencks Act material. *See* 18 U.S.C. § 3500 (1982). The Government replied that all such material had been supplied except for an OSBI report which had been obtained by subpoena only the day before trial. Assistant United States Attorney Baker explained that although he now had the report, he could not turn it over to defense counsel because of a state statute prohibiting its dissemination. *See* Okla.Stat. tit. 74, § 150.5 (Supp.1983).[1] Baker asked the district court to issue an order compelling production of the report in order to avoid the strictures of the statute. The court stated that the Jencks Act itself compels production, whereupon Baker gave it to defense counsel.

After a lengthy recess during which he read the OSBI report, defense counsel moved to dismiss the case because the report ostensibly contained *Brady* material that had been requested before trial. The report contained the statement, "Howard claimed no knowledge of any actual drug transactions." Rec., vol. III, at 172. The judge took the motion under advisement, and defense counsel continued his cross-examination of Howard. Although afforded ample time and opportunity, the defense chose not to use the newly-discovered information in cross-examination. The judge

---

1. The statute provides that, except in specified circumstances, "[a]ll records relating to any investigation being conducted by the [OSBI] shall be confidential ...." Okla.Stat. tit. 74, § 150.- 5(D) (Supp.1983). The "unauthorized disclosure" of such information is a misdemeanor. *Id.*

subsequently denied the motion to dismiss, and Warhop appeals that denial. We hold that the district court correctly denied the motion.

*United States v. Alberico*, 604 F.2d 1315 (10th Cir.), *cert. denied*, 444 U.S. 992, 100 S.Ct. 524, 62 L.Ed.2d 422 (1979), presented this court with similar circumstances. Alberico attempted to establish an entrapment defense at trial, but the jury rejected it. On appeal, he claimed a *Brady* violation because the prosecution failed to advise him before trial that one of the participants in the crime was an undercover FBI agent. However, the involvement and identity of the FBI agent had been uncovered during trial. We concluded that *Brady* was not violated when the alleged exculpatory material was available for use at trial. *Id.* at 1319. Similarly, in the case at bar, Warhop was not denied use of the evidence entirely. At most, he was denied its use for the one day between the time Baker obtained possession of it from the state by subpoena, and the time Baker tendered it to defense counsel during trial. The report was given to defendant's counsel during his cross-examination of Howard. Defense counsel read the report and could have integrated the statement contained therein into his continued cross-examination of Howard. Indeed, the only difference between *Alberico* and this case is that in *Alberico* defense counsel presented the evidence to the jury, whereas in this case defense counsel chose not to do so. Many things might account for defense counsel's decision not to use the evidence in this case, but lack of information was not one of them. While we strongly disapprove of delayed disclosure of *Brady* materials, that alone is not al-ways grounds for reversal. "As long as ultimate disclosure is made before it is too late for the defendant[ ] to make use of any benefits of the evidence, Due Process is satisfied." *United States v. Ziperstein*, 601 F.2d 281, 291 (7th Cir.1979), *cert. denied*, 444 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667 (1980); *accord United States v. Allain*, 671 F.2d 248, 255 (7th Cir.1982); *Alberico*, 604 F.2d at 1319; *United States v. Hemmer*, 561 F.Supp. 386, 391 (D.Mass. 1983), *aff'd*, 729 F.2d 10 No. 83–1379 (1st Cir.1984). Thus, reversal on this basis is not warranted.

## II.

The second alleged *Brady* violation resulted from Warhop's discovery after trial of an interview conducted by the FBI with Clifton Carter. Carter stated during the interview that he had never had any drug, narcotics, or business dealings or transactions with Warhop. The Government failed to disclose to defense counsel that this statement occurred during the interview, or that the interview itself took place.[2]

In *United States v. Agurs*, 427 U.S. 97, 103–07, 96 S.Ct. 2392, 2397–2399, 49 L.Ed.2d 342 (1976), the Supreme Court described three situations in which *Brady* arguably applies. In the first situation, the undisclosed evidence demonstrates that the prosecution's case includes perjured testimony and that the prosecution knew, or should have known, of the perjury. *See, e.g., Mooney v. Holohan*, 294 U.S. 103, 55 S.Ct. 240, 79 L.Ed. 791 (1935). In the second situation, the defense has made a request for specific evidence to which the prosecution fails to respond. *See, e.g.,*

2. The Government says it made no disclosure because the information was already available to defense counsel, Gene Stipe. The prosecutor claims that he had made available to Mr. Stipe the trial transcript from an earlier criminal proceeding against Carter during which Carter allegedly made the same statement. In his brief, Mr. Stipe "vehemently denied" that such disclosure occurred. *See* Brief of Appellant at 7. We find Mr. Stipe's claimed ignorance somewhat dubious because he admitted in oral argument that he had been Carter's counsel when Carter was arraigned, and that his firm had represent-ed Carter in his petition for certiorari to the United States Supreme Court. Consequently, it seems likely that Mr. Stipe knew what Carter had said in his trial, and could have used that information in Warhop's trial. Because we are unable to resolve this factual dispute, however, we do not decide whether disclosure of the trial transcript, if made, would have satisfied *Brady*. In this case, the problem disappears because of our alternative resolution of the *Brady* issue. However, for future cases, we recommend better documentation of *Brady* disclosures by the Government.

*Brady*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. In the third situation, the defense has made no request at all, or merely a very general one for "all *Brady* material" or "anything exculpatory." *See Agurs*, 427 U.S. at 106, 96 S.Ct. at 2398. In all three situations, the burden is upon the defendant to prove: (1) the suppression of evidence by the prosecution; (2) the favorable character of the suppressed evidence to the defense; and (3) the materiality of the suppressed evidence. *See Moore v. Illinois*, 408 U.S. 786, 794–95, 92 S.Ct. 2562, 2567–68, 33 L.Ed.2d 706 (1972); *see also Talamante v. Romero*, 620 F.2d 784, 787–88 (10th Cir.), *cert. denied*, 449 U.S. 877, 101 S.Ct. 223, 66 L.Ed.2d 99 (1980); *United States v. Jackson*, 579 F.2d 553, 560 (10th Cir.), *cert. denied*, 439 U.S. 981, 99 S.Ct. 569, 58 L.Ed.2d 652 (1978); *Wagster v. Overberg*, 560 F.2d 735, 739–40 (6th Cir.1977).

■■■ *Agurs* sets out varying standards for assessing the materiality of a nondisclosure. If the defense has made a general request only, it must show that "the omitted evidence creates a reasonable doubt that did not otherwise exist." *Agurs*, 427 U.S. at 112, 96 S.Ct. at 2401. If the request was specific, on the other hand, the defense merely need show that the undisclosed evidence "might have affected the outcome of the trial." *Id.* at 105, 96 S.Ct. at 2398. Cases interpreting this latter standard have held that a new trial is required "if there was a 'reasonable possibility' that the undisclosed evidence would have materially affected the verdict." *Chavis v. North Carolina*, 637 F.2d 213, 223 (4th Cir.1980); *see also United States v. Goldberg*, 582 F.2d 483, 489 (9th Cir. 1978), *cert. denied*, 440 U.S. 973, 99 S.Ct. 1538, 59 L.Ed.2d 790 (1979).

■■■ In his pretrial discovery motion, defense counsel requested, inter alia, "any and all exculpatory evidence" and "[a]ny F.B.I. interview statements ('302's'), which tend to exculpate the Defendant or impeach the testimony of Government witnesses." Rec., vol. I, at 6. We hold that Carter's statements were within the specific request above for "any F.B.I. interview statements." The crux of the distinction made in *Agurs* between specific requests and general requests is that a general request "really gives the prosecutor no better notice than if no request is made." *Agurs*, 427 U.S. at 106–07, 96 S.Ct. at 2398. A specific request, on the other hand, gives the prosecutor "notice of exactly what the defense desired." *Id.* at 106, 96 S.Ct. at 2398. A request for "any F.B.I. interview statements" gave the prosecutor here more than sufficient notice of what the defense desired. *See Chaney v. Brown*, 730 F.2d 1334, 1341–1344 (10th Cir.1984) (thorough discussion of general and specific requests under *Agurs*). That the Government failed to prepare an FBI 302 report or to retain notes of the interview does not absolve it of its duty to disclose. "[B]efore a request for discovery has been made, the duty of disclosure is operative as a duty of preservation. Only if evidence is carefully preserved during the early stages of investigation will disclosure be possible later." *United States v. Bryant*, 439 F.2d 642, 651 (D.C.Cir.1971); *accord United States v. Gantt*, 617 F.2d 831, 841 (D.C.Cir.1980); *United States v. Harris*, 543 F.2d 1247, 1251–52 (9th Cir.1976).

We therefore turn to whether a reasonable possibility exists that the undisclosed evidence here would have materially affected the verdict. Warhop contends that Carter's denial of any drug dealings with him would have materially affected the verdict because "the entire conspiracy charged and all the overt acts in furtherance thereof centered around the alleged partnership agreement entered into by Clifton Carter and the Appellant." Brief of Appellant at 5. The record does not support this assertion. The bulk of the Government's evidence reflects an agreement between Warhop, Michael Hall, and Howard to purchase and transport drugs from Texas for resale in Kansas City. While there was also evidence of Carter's involvement with Warhop in drug dealing, the focal agreement did not involve Carter at all. Moreover, the indictment alleged only a conspiracy be-

tween Warhop, Hall, and the two unindicted coconspirators, Howard and Blaine Brooks. Carter was not even charged, a fact emphasized by defense counsel in his opening statement. Thus, even if the jury believed that Carter' had never had any drug dealings with Warhop,[3] substantial evidence nevertheless existed of an agreement between Warhop, Hall, and Howard. Moreover, any evidence of an agreement between Warhop and Carter is so insubstantial that the jury could not have been relying upon that in finding Warhop guilty. Accordingly, we find no reversible error in this case under *Brady*.

AFFIRMED.

**3.** If defense counsel had called Carter as a witness, the jury would have had to believe Carter's story in the face of his prior conviction for conspiracy to manufacture, possession with intent to distribute, and distribution of marijuana. *See United States v. Carter,* 613 F.2d 256, 258 (10th Cir.1979).