Michael William STRAND, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 82-C-1138G.

United States District Court, D. Utah, C.D.

Sept. 28, 1987.

John T. Caine, Ogden, Utah, D. Frank Wilkins, Salt Lake City, Utah, for plaintiff.

Stewart C. Walz, Salt Lake City, Utah, for defendant.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came before the court on July 15, 1987, for an evidentiary hearing pursuant to Michael William Strand's ("Strand") Petition for a Writ of Error Coram Nobis. Strand was represented by John T. Caine and D. Frank Wilkins, and the United States of America ("Government") was represented by Stewart C. Walz. The parties presented substantial testimony and offered a number of exhibits. After closing arguments of counsel the court took the matter under advisement. Being now fully advised the court sets forth its Memorandum Decision and Order.

## FACTUAL BACKGROUND

The history of this case is, by this time, rather long and complex. The court recites it at length to give perspective to Strand's present petition. On October 14, 1978, a jury found Strand guilty of willfully subscribing a false income tax return in violation of 26 U.S.C. § 7206(1), and of fraud in the sale of securities in violation of 15 U.S.C. §§ 77q(a) and 77x. A third charge,

interstate transportation of stolen property was dismissed on Strand's motion at the close of the Government's case. Strand's convictions were affirmed on appeal. *United States v. Strand,* 617 F.2d 571 (10th Cir.1980) ("Strand I"), *cert. denied* 449 U.S. 841, 101 S.Ct. 120, 66 L.Ed.2d 48 (1980). The Tenth Circuit summarized the proceedings at trial as follows:

The alleged violations occurred during 1973. Strand was then involved in numerous selling and purchasing stock transactions of Epoch Corporation (Epoch), being traded on the over-the-counter exchange. Strand effectuated these transactions through his own accounts at different brokerage houses. By utilizing both his own and various nominee accounts, (fn. 1) Strand was able to control the purchase and sale "prices" of Epoch stock and create the appearance of an active market for its securities. In summarizing these transactions, Special Agent David Jensen of the Internal Revenue Service estimated Strand's Epoch transactions produced gross receipts of $293,793.37. The Government also established that during this same time frame, Strand was involved in preparations for two mergers for which he received finder's fees of $29,000.00.

Exhibit 27, admitted as a certified copy of Strand's income tax return for 1973, showed zero tax computations and income. It did not contain references to the gross receipts relating to Strand's sale of stocks or the aforesaid finder's fees.

Strand defended the charge that he had subscribed a false income tax return in violation of § 7206(1) on the basis that he had actually suffered a loss of $7,000 in 1973 on the Epoch transactions, that he did not realize he had any tax reporting obligation until after 1973 when he "heard" that even though he did not have income he was obligated to file; and that, accordingly, in January, 1975, he filed a 1973 return.

Strand defended the fraud in the sale of securities charge on the basis that: he took over trading in Epoch corporation

when he thought its proposed merger with an insurance company would cause its stock to increase in value; the sale of Epoch stock, giving rise to the charges, was initiated by one Bruce Allen Jensen (Jensen); Jensen managed the entire transactions and was the principal actor throughout the whole transaction; he (Strand) was not aware that his account had been improperly used by Jensen; and when, as here, the alleged defrauded party, Jensen, was a principal in the transaction and wholly aware of the nature of the fraud, there was no fraud on that person simply because the transaction did not prove to be as beneficial as expected.

(fn. 1) A nominee account is one in which the account is listed in the name of an individual, when in fact the transactions within the account are for someone other than the named individual.

*Strand I,* 617 F.2d at 572–73.

On October 28, 1980, Strand filed a motion for new trial in the district court. The basis of Strand's motion was the discovery of new evidence which purportedly established the government's failure to disclose, prior to trial, exculpatory evidence, as required by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1983) and the Jencks Act, 18 U.S.C. § 3500 (1976). In particular, Strand argued that the Government had not turned over the following: (1) a memorandum of an interview I.R.S. Special Agent Ronald Harrington ("Harrington") had on March 23, 1976 with Bruce Jensen, a witness who testified for the government at trial, and (2) the transcript of a tape recorded interview Harrington had on April 7, 1976 with Carl Martin, who did not testify at trial. The district court denied Strand's motion, finding that neither the memorandum, nor the transcript was *Brady* or Jencks material. The court's decision was affirmed on appeal. *United States v. Strand,* No. 81–1697, slip op. at 2 (10th Cir. Aug. 27, 1982) ("Strand II"). The Tenth Circuit stated:

> In the instant case, it is arguable that neither Jensen's nor Martins' statements to Harrington are within the purview of the Jencks Act or the *Brady v. Mary-*

*land* rule. Jensen's statement to Harrington, as memorialized by Harrington, is, to us, unclear and difficult to follow and is not necessarily inconsistent with Jensen's testimony at trial. But when these two statements are placed in the context of the earlier trial, we agree with the district court that any possible error in this regard was harmless and would not have changed the outcome of the trial.

> Motions for new trial based on newly discovered evidence are generally not regarded with favor and should only be granted with great caution. The grant, or denial, of a motion of this type is within the sound discretion of the trial court, and, on review, should not be reversed absent a plain abuse of discretion.... [W]e [have] also said that before a new trial may be granted on the ground of newly discovered evidence, the defendant must show, *inter alia,* that the newly discovered evidence is not merely cumulative or impeaching in nature, but is so material and of such character that a new trial would probably produce a different result.... Here, the newly discovered evidence, which, incidentally, related primarily to the tax fraud charge contained in count one of the indictment, and had no direct relationship to the securities fraud charge contained in count two, was impeaching and cumulative in its character, and, as did the district court, we believe disclosure of the evidence would not have changed the outcome of the trial.

*Strand II,* No. 81–1697, slip op. at 6–7 (10th Cir. Aug. 27, 1982) (citations omitted).

On November 23, 1982, Strand filed a petition for relief from conviction under 28 U.S.C. § 2255, and a motion for reduction of sentence under Rule 35 of the Federal Rules of Criminal Procedure. The basis of Strand's § 2255 petition was again the Government's alleged failure to turn over prior to trial exculpatory evidence as required by *Brady* and the Jencks Act. In particular Strand asserted the Government had failed to turn over to the defense a letter dated April 28, 1976 from F.B.I. Spe-

cial Agent Ronald L. Maley to C. Evan Wride, who was then chief of the Intelligence Division of the Internal Revenue Service. The letter, the court notes, "contains the description of an interview conducted by the F.B.I. with Peter James Gushi, an individual supposedly involved in some of the transactions forming the basis of the government's case against Mr. Strand at trial." Order, Nos. CR78–0091, C82–1138A, at 2 (D. Utah Aug. 3, 1983). Strand also filed a supplemental memorandum in support of his motions and attached thereto a "green folder" containing items numbered 1–26. At the hearing on the matter the Government argued that the court should not consider the items in the green folder because they had never been formally offered into evidence. The court took the entire matter under advisement. In a memorandum order the court denied Strand's motion under § 2255, having concluded that the Gushi letter was "not of such character that it is at all likely to produce a different result at a new trial." *Id.* The court did not discuss the items in the green folder in any way. Strand appealed, alleging that the court had erred (1) in failing to consider documentary evidence (the green folder) of governmental misconduct, and (2) in applying the wrong burden of proof in denying Strand's § 2255 petition. The Tenth Circuit affirmed the district court's order. With respect to the materials in the "green folder" the court stated,

> Neither the "green folder" nor the 26 exhibits are in the record before us; nor for that matter, does the record contain all of Strand's many § 2255 pleadings which we earlier chronicled. Under such circumstance we cannot consider Strand's allegations that the district court failed to consider certain documentary evidence.

*Strand v. United States,* 780 F.2d 1497, 1500 (10th Cir.1985) ("Strand III").

On October 23, 1986, Strand filed another motion for new trial under § 2255. In this motion Strand again argued that the documents in the green folder should be considered as *Brady* material not provided the defense prior to trial. At this time Strand

was no longer "in custody," having been discharged from probation on August 20, 1986. Since Strand was not in custody, the court concluded it was without jurisdiction to consider a § 2255 petition, *see* 28 U.S.C. § 2255; *United States v. Condit,* 621 F.2d 1096, 1098 (10th Cir.1980), and denied the motion without prejudice to proceeding in another way. Finally, on January 6, 1987, Strand filed the Petition for Writ of Error *Coram Nobis* which is now before the court.

## ANALYSIS

In this petition Strand asks the court to reverse his conviction and to remand the case for a new trial on the basis of the materials in the green folder, and other newly discovered material. In an earlier hearing on this petition the Government urged the court to deny Strand's petition without an evidentiary hearing on the ground that the petition was an abuse of the writ. Having concluded that a full and fair evidentiary hearing on the merits had never been held with respect at least to some of the materials presented, the court declined the Government's invitation and scheduled the matter for an evidentiary hearing to consider the items in the green folder and any other relevant evidence Strand might have to offer in support of his petition for a writ of *coram nobis.*

### Legal Standards

#### 1. Coram Nobis

In this case, the jury's verdict and the court's judgment long ago was appealled and confirmed. *See Strand I,* 617 F.2d at 578. The case is not before this court for retrial, nor for direct appellate review. Rather, the court is asked to issue a writ of error *coram nobis.* While the writ remains available in criminal cases, *United States v. Morgan,* 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954), it is an "extraordinary remedy," *id.,* which is appropriate to correct only fundamental errors and to prevent injustice. *Morgan,* 346 U.S. at 512, 74 S.Ct. at 253; *United States v. Williamson,* 806 F.2d 216, 222 (10th Cir.1986). One of the traditional require-

ments necessary for issuance of the writ is that no other form of relief be available. *Morgan,* 346 U.S. at 512, 74 S.Ct. at 253; *Adams v. United States,* 274 F.2d 880, 882 (10th Cir.1960); *Korematsu v. United States,* 584 F.Supp. 1406, 1412 (N.D.Cal. 1984); 3 C. Wright, Federal Practice and Procedure § 592, at 433 (2nd ed. 1982). Given the broad conception of "in custody" that the federal courts have developed over the years, *see Jones v. Cunningham,* 371 U.S. 236, 243, 83 S.Ct. 373, 377, 9 L.Ed.2d 285 (1963); *Condit,* 621 F.2d at 1098, relief under § 2255 is now available in a broad range of circumstances. As a consequence, *coram nobis* has been supplanted to a great extent. As present, *coram nobis* petitions are brought generally only after the petitioner has been finally released from probation, parole, or any other form of minimal custodial supervision. Thus, courts, in reviewing *coram nobis* petitions frequently are asked to make determinations based on records that are distant, cold, and often attrited. In this case, as in *Morgan,* the petitioner has met the requirement that no other relief be available, by showing that he is no longer in custody. In *Morgan* the Supreme Court cautioned, "[c]ontinuation of litigation after final judgment and exhaustion or waiver of any statutory right to review should be allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice." *Morgan,* 346 U.S. at 511, 74 S.Ct. at 252. Similarly, the Tenth Circuit has noted that, "absent a complete miscarriage of justice, and where there have been no serious, fundamental violations of [the petitioner's] constitutional

rights, society's interest in finality would not be served by granting [*coram nobis*]." [1] *Williamson,* 806 F.2d at 222; *see Carter v. Attorney General,* 782 F.2d 138, 141 (10th Cir.1986).

### 2. *Brady v. Maryland*

█ In this case Strand bases his petition for *coram nobis* on the claim that his right to a fair trial, mandated by the Due Process Clause of the Fifth Amendment to the Constitution, has been violated by the Government's failure to disclose prior to trial certain pieces of evidence Strand claims are exculpatory. In *Brady v. Maryland,* 373 U.S. at 87, 83 S.Ct. at 1196–97, the Supreme Court held that "the suppression by the prosecution of evidence *favorable to an accused* upon request violates due process *where the evidence is material* to either guilt or punishment, irrespective of the good faith or bad faith of the prosecution." (Emphasis added.) Thus, under *Brady* two requirements must be met before suppression of evidence gives rise to a constitutional violation: (1) the evidence must be favorable to the accused, and (2) it must be material to guilt or punishment. The standard by which materiality[2] is judged under *Brady* has evolved over time. At the time of the trial in this case materiality was judged according to three distinct standards which "varied according to the knowledge of the prosecution and the specificity of the defendant's request." *United States v. Page,* 828 F.2d 1476, 1479 (10th Cir.1987).

First, where the prosecution knew or should have known that its case included

---

1. Claims of prosecutorial misconduct and constitutional error are among those that courts have found may justify granting *coram nobis. See United States v. Taylor,* 648 F.2d 565, 573 (9th Cir.1981).

2. The Tenth Circuit has noted that,
   When evaluating "materiality" in the *Brady* context, the usual legal denotation of the word "material" in the evidentiary sense must be clearly distinguished from the word's meaning in this constitutional sense. The use of the word "material" as the benchmark in both circumstances is unfortunate, for its meaning in the two contexts is radically disparate. Evidence clearly "material" and ad-

missible as a threshold proposition may be deemed to be "immaterial" in retrospect in a *Brady* inquiry.
In the evidentiary sense, we are narrowly looking to whether the proposition toward which the evidence is directed is a necessary element of the crime or a defense. In the constitutional sense, we are looking at the entire trial to determine whether the defendant's conviction was obtained by violating due process, whether his or her trial was tainted with fundamental unfairness because certain evidence was not disclosed to the defense. *Trujillo v. Sullivan,* 815 F.2d 597, 612 n. 9 (10th Cir.1987).

perjured testimony, the conviction will be overturned "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." Second, where defense counsel requests disclosure of particular evidence, the specific request puts the prosecution on notice of its obligation to disclose. In such a case, the verdict must be set aside if "the suppressed evidence might have affected the outcome of the trial." Third, where the defense has made a general request for all *Brady* material, the prosecution is put on no better notice than if no request is made. Where there is no request or a general request, the judgment will be set aside "if the ommitted evidence creates a reasonable doubt that did not otherwise exist."

*Bowen v. Maynard,* 799 F.2d 593, 603 (10th Cir.1986) (quoting *United States v. Agurs,* 427 U.S. 97, 103–04, 104, 112, 96 S.Ct. 2392, 2397, 2398, 2402, 49 L.Ed.2d 342 (1976) (citation omitted)). Subsequent to the trial in this case, in 1985, the Supreme Court enunciated a unified standard under which, "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375,

3383–84, 87 L.Ed.2d 481; *see also id.* at 685, 105 S.Ct. at 3385 (White, J., joined by Burger, C.J., and Rehnquist, J., concurring in part and in judgment). Neither the Supreme Court nor the Tenth Circuit, as yet, has not decided whether the *Bagley* standard should apply retroactively. *See, e.g., Bowen,* 799 F.2d at 603. Consequently, this court will analyze Strand's allegations under both *Bagley* and *Agurs. Compare United States v. Page,* 828 F.2d 1476 at 1479 (10th Cir.1987).

Prior to trial defense counsel requested that the Government disclose *Brady* materials. However, Strand does not contend that any of the material he now brings to the court's attention is material *specifically* requested prior to trial. Accordingly, under *Agurs* a new trial would be required only if the omitted evidence creates a reasonable doubt that did not otherwise exist. Under *Bagley,* all omitted evidence, whether requested or not, would justify a new trial only if it is reasonably probable that the result of the trial would have been different, had the evidence been disclosed. With these principles in mind the court now turns to an analysis of the evidence Strand alleges was favorable, material, and not disclosed prior to trial.

*Analysis of the Evidence*

Strand has offered some fifty-six [3] pieces of evidence in support of his petition.

---

3. A summary of the evidence Strand has offered is as follows:

*Exhibit 1* (the green folder)

1—Affidavit of David Yeaman, dated 03/29/76 ("Yeaman Affidavit");

2—Testimony of Carl Martin, taken 04/07/76 ("Martin Testimony");

3A—Government's Response to Defendant's Motion for New Trial, dated 11/10/80;

3B—Letter from Richard J. Leedy to Judge H. Vearle Payne, dated 11/20/80;

4A—Memorandum of Interview of Bruce Jensen, dated 03/25/76 taken by Harrington ("Jensen Interview");

4B—Affidavit of Jack T. Litman, dated 04/30/81;

4C—Transcript of Hearing, held 01/07/81 in United States v. Strand (CR78–91) ("Strand hearing") pp. 23, 46–47;

5—Letter from Ronald L. Maley to C. Evan Wride, dated 04/28/76 ("Gushi letter");

6—Strand hearing, pp. 19–25, 42–43;

7—Affidavit of Leland Martineau, dated 02/08/83;

8—Strand hearing, pp. 78–79;

9A—Associated Underwriter's Account Card—Mike Strand ("Strand Account Card") *and,* Transcript of trial in United States v. Strand, CR78–91 ("Strand trial"), pp. 285–88, 343–45;

9B—Transcript of SEC hearing, testimony of Bruce Jensen ("Jensen Testimony"), pp. 93–94;

9C—Transcript of SEC hearing, pp. 107–08;

9D—Affidavit of Bruce Jensen, dated 09/23/77;

9E—Transcript of SEC hearing, questions by Mike Strand, pp. 387–88;

10—Evidence Summary pp. 10–16;

11—Strand trial, testimony of Dean W. Cluff, pp. 305–15;

12—Associated Underwriter's Annual Report;

13—Strand trial, testimony of Gary Ramsey, pp. 597–99;

14—William O'Niel "Trade tickets";

15A—Affidavit of Alex Walker, dated 08/23/77;

15B—Letter from Stoney River, Inc. to Alex Walker, dated 09/26/73;

Strand offered the now familiar "green folder" as his Exhibit 1 containing items numbered 1 through 26, with some numbers containing lettered parts, and an item identified as "AA." In addition to the green folder, Strand marked and offered Exhibits 2 through 16 at the evidentiary hearing. He argues that the Government's failure to provide these documents prior to trial was a serious, fundamental violation of his constitutional rights that renders the verdict in his trial a complete miscarriage of justice. However, not all Strand's offered evidence should be analyzed for its probative weight. A number of Strand's original offerings were either withdrawn or were not admitted into evidence.[4] Further, a great number of items provided in the green folder are not themselves alleged to be *Brady* material, new evidence, or otherwise exculpatory.[5] They are, rather, documents provided to show the importance of the exculpatory documents. In his petition Strand explains that the exculpatory documents were "assembled in the 'green folder' in an attempt to make their individual significance easily apparent *in the context of the other trial evidence."* Petition for Writ of Error Coram Nobis, at 10 (emphasis added). Among these "supporting documents" are excerpts of testimony witnesses gave at trial and other hearings, memorandums, previous decisions of this court, and other documents which appear in the various files. These documents were admitted into evidence without objection, and they are, for the most part, the kinds of things of which the court could simply take judicial notice. Since there is no allegation that the items are "new evidence," or that the items were suppressed by the Govern-

16A—Strand trial, testimony of J. O'Quinn, pp. 668–70;

16B—Strand trial, testimony of J. Katter, pp. 474–75;

16C—Strand trial, testimony of B. Applegate, pp. 671–74;

16D—Strand trial, testimony of L. Martineau, pp. 815–20;

16E—Strand trial, testimony of M. Strand, pp. 760–61;

17—Chart of conflicts;

18—Transcript of SEC hearing, testimony of B. Jensen, p. 1;

19—Transcript of SEC hearing, testimony of B. Jensen, p. 6;

20—"Proposal" to B. Jensen from Nitram Development Co.;

21—Strand hearing, testimony of Carl Martin, pp. 86–89 ("Martin Post–Trial Testimony");

22A—Subpoena and check re: Peter James Gushi;

22B—Marshall's Return of Service;

23—Testimony of David Yeaman, taken 07/29/77 ("Yeaman Testimony");

24A—Summary of Criminal Files, U.S. Attorney Max Wheeler, by Rand M. Elison, dated 05/01/78 ("Martin File Summary");

24B—Appendix—Schedule of C. Martin stock sales ("Schedule of Martin Stock Sales");

24C—Court docket sheet, NCR78–16;

25A—Memorandum to the District Director of Internal Revenue (recommending prosecution of Michael Strand) ("Prosecution Memo");

25B—Affidavit of Gary Ramsey, dated 03/14/83, and Memorandum of Interview of Gary Ramsey, dated 08/25/77, taken by Patti Danks;

25C—Testimony Chart of D. Yeaman;

26—Transcript of hearing, held 09/22/78 in United States v. Strand, CR78–91;

AA—Motion for Reduction of Sentence, in United States v. Bruce A. Jensen, CR76–114;

Exhibit 2—Affidavit of Kenneth Dean Pace, dated 04/76 ("Pace Affidavit");

Exhibit 3—Associated Underwriter's Account Card—Carl Martin ("Martin Account Card") and, handwritten notes;

Exhibit 4—Letter from Brent D. Ward to Karl N. Snow, dated 02/20/85;

Exhibit 6—Letter from Brent D. Ward to Karl N. Snow, dated 04/15/85;

Exhibit 7—Letter from Karl N. Snow to Brent D. Ward, dated 03/27/85;

Exhibit 8—Same as Exhibit 4;

Exhibit 10—Letter from Karl N. Snow to Brent D. Ward, dated 12/19/84;

Exhibit 12—Letter from Brent D. Ward to Karl N. Snow, dated 11/21/84;

Exhibit 13—Letter from Karl N. Snow to Brent D. Ward, dated 09/17/84;

Exhibit 14—Note "Keep from Strand";

Exhibit 15—Affidavit of David Floor, dated 12/18/84;

Exhibit 16—Associated Underwriter's confirmation slip, dated 07/31/75.

4. A total of twenty items were either withdrawn or were not received because they lacked of relevance, foundation or simply were not evidence. In the green folder this included the following numbered items: 7, 9E, 10, 12, 14, 15A, 15B, 17, 18, 19, 20, 25B and 25C. Plaintiff's exhibits 5, 8, 9, 11, 13, 14 and 16 were also withdrawn or excluded.

5. The court has found a total of nineteen items to be "supporting documents." They include only the following numbered items from the green folder: 3A, 3B, 4B, 4C, 6, 8, 9C, 9D, 11, 13, 16A, 16B, 16C, 16D, 16E, 22A, 22B, 26 and AA.

ment, they are not properly examined for their own exculpatory weight, but only as they are relevant to support Strand's argument with respect to evidence he contends is new or was suppressed.[6]

■ Finally, it appears that courts in previous petitions have considered on the merits some of the evidence Strand asks this court to consider. In Strand's first collateral attack on his conviction, Strand offered into evidence at least four pieces of evidence he today urges in support of his petition.[7] The court in its Memorandum Opinion, filed May 26, 1981, specifically discussed the Jensen Interview (Ex. 1–4A) and the Martin Testimony (Ex. 1–2) and concluded that failure to disclose these pieces of evidence did not mandate a new trial. The court's conclusion was affirmed on appeal. *United States v. Strand*, No. 81–1697, slip op. at 2 (10th Cir. Aug. 27, 1982).

Similarly, in Strand's second collateral attack, Strand offered and the court specifically discussed the effect of the Gushi letter (Ex. 1–5). The court concluded that the letter was not of such a character that its suppression mandated a new trial and the Tenth Circuit affirmed. *Strand III*, 780 F.2d at 1501. Under the principles enunciated in *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1983) the court declines to reconsider these pieces of evidence, with exceptions noted below, having determined that the hearings in which these pieces of evidence were considered were full and fair, *Townsend v. Sain*, 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963), and that the ends of justice would not be met by reaching the

merits with respect to this evidence. Of the remaining pieces of evidence, this court concludes that they are not of such a character as to justify *coram nobis* for the reasons set forth below.

**A. Carl Martin, David Yeaman, and Kenneth Dean Pace**

■ Four pieces of evidence are offered from Martin, Yeaman and Pace: (1) Martin Post–Trial Testimony (Ex. 1–21); (2) Yeaman Testimony (Ex. 1–23); (3) the Yeaman Affidavit (Ex. 1–1); and, (4) the Pace Affidavit (Ex. 2). As a preliminary matter, the court notes that it is very likely that these four pieces of evidence have been considered in previous petitions. For instance, the Martin Post-trial Testimony clearly was considered at Strand's January 7, 1981 post-trial hearing. Similarly, the Yeaman Affidavit and the Pace Affidavit were clearly introduced at the January 7th hearing. *See supra* note 6. With respect to the Yeaman Testimony, however, the record is less clear. Near the end of the hearing Mr. Litman, one of Strand's counsel, tendered to the Government documents the Government had provided for Strand's review the previous day. In an exchange on the record Litman refers to "a question and answer session which was tape recorded, apparently, also, notarized, which makes it sworn testimony, although there is no signature at the end, but, in any event, it's of David Yeaman, 18 pages." Transcript of Hearing held Jan. 8, 1981, at 11. The Yeaman testimony now before the court fits Litman's description.

Though all this evidence appears to have been before the court, it is not referred to

---

**6.** In this regard the court notes that on September 21, 1987, Strand submitted a Motion to Consider Post–Hearing Evidence in which Strand asked the court to consider Agent Harrington's Official Personnel File (OPF). At the hearing on Strand's Petition for Coram Nobis, testimony was introduced relative to Harrington's credibility. The court has duly considered Harrington's OPF in its analysis of this matter.

**7.** The transcript of the hearing reflects that Strand offered the following three exhibits: (1) Martin Testimony (Ex. 1–2), *see* Transcript of Hearing held Jan. 7, 1981, at 5–6; (2) Yeaman Affidavit (Ex. 1–1), *see* Transcript of Hearing

held Jan. 7, 1981, at 101–02, 112; Transcript of Hearing held Jan. 8, 1981, at 11; (3) Pace Affidavit (Ex. 2) *see* Transcript of Hearing held Jan. 8, 1981, at 3.

In addition, Strand elicited testimony from Agent Harrington to the effect that he had conducted an interview with one Bruce Jensen and had made memorandum of that interview. At the hearing the Government represented it had no such memorandum in its possession. However, the Government did produce the Jensen Interview (Ex. 1–4A) attached to its post hearing Memorandum of Authorities.

in the court's decision regarding Strand's motion. It is reasonable to conclude that, although this evidence was introduced, the court concluded it need not be specifically considered because it had not been argued. Strand's failure to argue that evidence in the 1981 hearing, after having introduced it, could also justify this court's refusal to consider the evidence in this proceeding. *See Wong Doo v. United States*, 265 U.S. 239, 44 S.Ct. 524, 68 L.Ed. 999 (1924); *Sanders*, 373 U.S. at 17, 83 S.Ct. at 1078. However, because there is a possibility this evidence has not been fairly considered on the merits in prior petitions, the court analyzes each piece individually.

### 1. The Martin Post–Trial Testimony

The first problem with this evidence is that it is obviously not *Brady* material. This testimony was taken *after trial* and thus by definition could not be *Brady* material. Second, the substance of the testimony is not exculpatory. Martin reports that he and Peter Gushi earned a $20,-000.00 finder's fee, but that he did not receive it: "[I]f there was a 20,000.00 paid, it was paid after I left town and I assume that Peter Gushi would have either gotten the money or directed where the money went." Transcript of Hearing held Jan. 7, 1984, at 88. This does not in any way conflict with the Government's contention that Strand received and controlled the money or its benefit.[8] Martin's Post–Trial Testimony provides no justification for a new trial. It was not withheld from the defense; it is not exculpatory, and would not in any way have affected the outcome of the trial.

### 2. The Yeaman Testimony and Yeaman Affidavit

Strand claims that the Yeaman Testimony and Affidavit are favorable material evidence that could have been used effectively to impeach Yeaman. The basis for this argument is Strand's assertion that in the Yeaman Testimony, Yeaman was evasive and vague, but that at trial Yeaman was very definite in his statements, and that there are discrepancies between Yeaman's Testimony and his Affidavit. Strand's assertion is not persuasive. There are no material discrepancies between the Affidavit and the Testimony which would have provided a possible basis for impeachment. Any variances in the conviction with which Yeaman spoke, or in the phrases he used to express his knowledge, are not unusual or impeaching. Further, the substance of the Yeaman evidence is anything but exculpatory. Yeaman notes that the last five thousand shares of Epoch Corporation stock, to be delivered to Carl Martin, were in fact delivered to Mike Strand. Yeaman also notes that he does not "know the relationship between Strand and Martin or why the 5,000 shares were delivered to Strand except that he [Martin] told me that he was getting out *and Michael Strand was taking over the Epoch operation.*" Yeaman Affidavit, at 1 (emphasis added). In sum the court holds that the Yeaman evidence neither creates a reasonable doubt that did not otherwise exist, nor is it reasonably probable the evidence would have affected the outcome of the trial.

### 3. The Pace Affidavit

This affidavit is not *Brady* material. In *United States v. Warhop*, the Tenth Circuit noted, "the burden is upon the [petitioner] to prove: (1) the suppression of evidence by the prosecution; (2) the favorable character of the suppressed evidence to the defense; and (3) the materiality of the suppressed evidence." 732 F.2d 775, 778 (10th Cir.1985). Here, Strand has made no showing that the material is in any way exculpatory to Strand.

### B. Bruce Jensen

Three pieces of evidence related to this trial witness are offered: (1) Strand Account Card (Ex. 1–9A); (2) Martin Account Card (Ex. 3); and, (3) Jensen Testimony

---

**8.** The only information Martin provides that could in any way be construed as exculpatory is his report that, as a result of his conviction, he was required to amend his 1973 income tax return to reflect the $20,000 finder's fee as income. This apparent inconsistency is not evidence, and it provides no basis for a new trial.

(Ex. 1–9B). The major problem with these pieces of evidence is Strand's inability to carry his burden of proof that they were not provided prior to trial. The Government's witnesses at this and previous hearings have testified that all evidence in the Government's possession related to the Strand case was made available. Strand is able to testify only that *he* did not see the "Jensen evidence" prior to trial. Strand testified that he and his counsel collected documents the Government had provided on at least one occasion, and that they divided the task of reviewing those documents. The Government's witnesses testified that documents were received on a continual basis, and that some documents were received even the week prior to trial. Given the Government's open file policy in this case, and given the limited review Strand testifies he himself made of the provided material, the court finds Strand has not shown by a preponderance of the evidence that the Jensen evidence was not disclosed prior to trial. *See Warhop*, 732 F.2d at 778.

Assuming *arguendo* the evidence was suppressed, the court finds that no reasonable doubt is created, and that there is no reasonable probability that the result of the proceeding would have been different had the evidence been disclosed. With respect to this evidence Strand's argument is obscure and difficult to follow. He argues that the Strand Account Card is a forgery and that the transactions reflected in the Martin and Strand Account Cards are inconsistent. This, Strand argues, in some way exculpates him. However, the court finds that the discrepancies between the accounts do not reflect anything more than that Strand was trading in many different accounts, as the Government contended at trial.

### C. Government Documents

The green folder also contains three documents generated by investigative agencies of the Government: (1) Martin File Summary (Ex. 1–24A); (2) Schedule of Martin Stock Sales (Ex. 1–24B); and, (3) Prosecution Memo (Ex. 1–25A). The first thing to note about these materials is that they are not in themselves relevant to, or probative of, Strand's guilt or innocence. These Government documents are secondary sources; they reflect the thought processes and investigations of government agents, and reflect the agents' review of the primary evidence. Thus, the government documents do not exculpate. Second, while *Brady* requires the government to disclose material favorable evidence, this mandate does not require the prosecutor "to deliver his entire file to defense counsel...." *Bagley*, 473 U.S. at 675, 105 S.Ct. at 3380; see also *United States v. George*, 778 F.2d 556, 560 (10th Cir.1985). Nor does it require the prosecutor to "make a complete and detailed accounting to the defense of all police investigative work on a case." *Moore v. Illinois*, 408 U.S. 786, 795, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706 (1972). In this case, however, the Government contends that these documents were in fact turned over to the defense. For the reasons explained above, the court finds that Strand has not met his burden of proof to show these documents were not provided.

Again, assuming *arguendo* the documents were suppressed, they do not justify a new trial. Strand argues the documents show bad faith and misconduct on the part of the Government.[9] The due process guarantee of a fair trial, however, is not affected by the motive of the prosecutor, but rather by the character of the evidence suppressed. The Supreme Court has noted that the constitutional obligation is not measured "by the moral culpability or wilfulness of the prosecutor." *Agurs*, 427 U.S. at 110, 96 S.Ct. at 2400. "If the suppression of evidence results in a constitutional error, it is because of the character of the evidence, not the character of the prosecutor." *Id.*

### D. The Snow–Ward Letters

The letters exchanged between U.S. Attorney Brent Ward and former State Sena-

---

**9.** In this regard, Strand also argues that the recently submitted Personnel File of Harrington shows bad faith. As noted above, the court has considered the Harrington Personnel File in its analysis of this matter.

tor Karl Snow are also offered to show bad faith and misconduct. For the reasons stated above, the court finds they are of no probative value.

E. Cumulative Effect

Strand finally argues that the cumulative effect of the nondisclosed evidence justifies *coram nobis.* The court finds no merit in this argument. On the whole, and taken together the court finds the evidence Strand alleges to be favorable, material evidence, to be of negligible exculpatory value. The court finds no reasonable probability that had the evidence been disclosed the result of the proceeding would have been different. *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3384.

Strand's petition for *coram nobis* is denied.

This Memorandum Decision and Order will suffice as the court's final action in this matter; no further Order need be prepared by counsel.